# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| KIRSTEN MEADE, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.  4:19-CV-00304 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| INGRAM MICRO, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #19). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

In April 2017, Kirsten Meade ("Meade") was involved in an eleven-car collision, which left her with two bulging discs, as well as injuries to her right hip and pelvis. Following the accident, Meade claims to have experienced chronic pain accompanied by severe migraines. To alleviate her pain and find some form of relief, Meade sought physical therapy and chiropractic care to treat her injuries.

In September of 2018, Meade informed Gregory Hauser ("Hauser"), her supervisor at Ingram Micro, that she needed time off work to address her medical issues. Meade claims she "informed Hauser that she was suffering from severe migraines, exhaustion, and extreme pain." (Dkt. #1 at ¶ 4.03). In November 2018, Meade moved from New York to Dallas, Texas. After the move, Meade claims to have emailed Defendant's Employee Benefits Manager to request Family and Medical Leave Act of 1993 ("FMLA") paperwork and a leave-of-absence form for her

upcoming medical leave. Having received the paperwork, Meade traveled back to New York in connection with her job and scheduled a doctor's appointment with her primary care physician, who she planned to have complete the FMLA paperwork. On the morning of the appointment, Meade attended a meeting during which she was terminated.

On April 24, 2019, Meade filed her complaint alleging retaliation under the FMLA and breach of contract.[1] On March 11, 2020, Meade filed a state-court action alleging disability discrimination under Chapter 21 of the Texas Labor Code, the Texas Commission on Human Rights Act ("TCHRA"). On April 4, 2020, Defendant filed its notice of removal, and the removed state court action was ultimately consolidated with the originally filed suit on April 22, 2020. On September 18, 2020, Defendant filed this Motion for Summary Judgment (Dkt. #19). Meade responded on October 9, 2020, (Dkt. #20), and Defendant filed its reply on October 16, 2020 (Dkt. #21).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

---

[1] The Court granted a joint stipulation dismissing Meade's breach-of-contract claim on February 4, 2020 (Dkt. #13).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

**ANALYSIS**

There are three issues for the Court to decide.[2] Defendant claims it is entitled to summary judgment on Meade's disability-discrimination claim because (1) Meade was neither disabled nor regarded as disabled by Defendant; and (2) Defendant terminated Meade for legitimate, nondiscriminatory reasons, and Meade presents no evidence that such reasons were a pretext for discrimination. Defendant also claims it is entitled to summary judgment on Meade's FMLA retaliation claim because (3) Defendant terminated Plaintiff for legitimate nonretaliatory reasons, and Meade offers no evidence that such reasons were a pretext for unlawful retaliation. The Court will address each issue in turn, starting with the disability-discrimination claim.

**I.    TCHRA Claim**

Meade asserts claims for disability discrimination pursuant to the Texas Labor Code. Tex. Lab. Code §§ 21.001, 21.051. Disability-discrimination claims under Texas disability law are considered analogous to claims under the Americans with Disabilities Act ("ADA"). *See Dillard v. City of Austin, Tex.*, 837 F.3d 557, 561 (5th Cir. 2016), *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006). Accordingly, the Court will apply the legal standards for the ADA to resolve Meade's TCHRA disability claim.

Absent direct evidence of discrimination, courts apply the burden-shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), to analyze discrimination claims under the ADA. *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014), *Whitley v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 1739917, at *3 (E.D. Tex. May 4, 2017). Meade can survive summary judgment if she can make a *prima facie* showing of discrimination by demonstrating that (1) she has a disability; (2) she is qualified for her job, and (3) she was subjected to an adverse

---

[2] Defendant presented four issues to the Court in its motion for summary judgment, but in her response, Meade withdrew her claim for failure to accommodate (Dkt. #20 at p. 3 n.2).

employment action on account of her disability. *LHC Grp., Inc.*, 773 F.3d at 697; *Whitley*, 2017 WL 1739917, at *3; *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 324 (5th Cir. 2020).

"Once a plaintiff establishes a *prima facie* showing of discrimination, a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Whitley*, 2017 WL 1739917, at *3 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226–27 (5th Cir. 2015)). "The burden then shifts to the plaintiff to show the articulated reason is pretextual." *Id.*

### 1. Prima Facie Showing of Disability

In its motion, Defendant only challenges whether Meade was disabled at the time of her termination (Dkt. #19 at p. 13). Disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The two standards of disability relevant here are "actual" and "regarded-as." *Id.* § 12102(1)(A), (C).

A plaintiff satisfies the actual standard by showing she has "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, [and] walking." *Id.* § 12102(2)(A). The Equal Employment Opportunity Commission has cautioned that the term "'[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict" performance of major life activities—but rather, the standard is whether it "substantially limits the ability of an individual to perform a major life activity as compared to

5

most people in the general population." *Id* § 1630.2(j)(1)(ii). This comparison "usually will not require scientific, medical, or statistical analysis." *Id.* § 1630.2(j)(1)(v).

A plaintiff satisfies the "regarded-as" standard by establishing she has been "subjected to a prohibited action [(*e.g.*, termination)] because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity." *Id.* § 1630.2(l)(1). Under the amended "regarded-as" standard, a plaintiff "needs to plead and prove only that she was regarded as having a physical or mental impairment [and not] that the actual or perceived impairment substantially limited one or more major life activities." *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (quotation and citation omitted); *see also Burton*, 798 F.3d, at 230. Therefore, to be "regarded as impaired," Meade "need only show that her employer perceived her as having an impairment and that it discriminated against her on that basis." *Burton*, 798 F.3d at 230 (cleaned up).

### a. Actual Disability

For Meade's actual-disability claim to survive summary judgment, Meade must present evidence to create a genuine dispute of material fact as to whether she has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Meade has proffered her declaration—containing medical records—and excerpts from her deposition as evidence that her impairments are substantially limiting (Dkt. #20, Exhibit 1; Exhibit 2; Exhibit 4).

Meade's declaration elaborates on the effects of her ailments. For example, in her health questionnaire from the Neck and Back Pain Relief Center, Meade complained that her condition interfered with work, sleep, her daily routine, and recreation (Dkt. #20, Exhibit 4 at Ingram000387). In her deposition, Meade stated that the pain from the injuries continued into and

worsened throughout 2018 (Dkt. #20, Exhibit 1 at 38:12–17). Meade even stated that she "was experiencing excruciating pain, not able to get out of bed some days, not able to get up and down the stairs, [and] migraine headaches." (Dkt. #20, Exhibit 2 at 76:13–18). These types of limitations fall squarely within the type of activities that constitute a disability under the ADA. 42 U.S.C. § 12102(2)(A) ("For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.").

Overcoming summary judgment "requires the nonmoving party to go beyond the pleadings and *by her own affidavits*, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (emphasis added) (quotation omitted); *see also* Fed. R. Civ. P. 56(c)(1). "Along that line, district courts within this circuit routinely consider a plaintiff's testimony, without more, sufficient to create a genuine dispute of material fact regarding substantial limitation." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 448 (5th Cir. 2018), reh'g denied (Feb. 20, 2018) (first citing *Kennedy v. Parkview Baptist Sch., Inc.*, 13-478-SCR, 2014 WL 7366256, at *14 (M.D. La. Dec. 24, 2014) ("viewed in the light most favorable to plaintiff, [her testimony and statements about her asthma] would be sufficient for a reasonable trier of fact to find" substantial limitation); then citing *Mercer v. Arbor E & T, LLC*, 11-cv-3600, 2013 WL 164107, at *13 (S.D. Tex. Jan. 15, 2013) ("even if the Court confined it's analysis to [plaintiff's] deposition testimony alone, she . . . demonstrate[d] a genuine [dispute] of material fact regarding whether [she] is disabled"); and then citing *Sechler v. Modular Space Corp.*, 4:10-CV-5177, 2012 WL 1355586, at *11 (S.D. Tex. Apr. 18, 2012) ("In light of the 'substantially limits'

7

standard created by the [ADA Amendments Act of 2008], the Court thinks it appropriate to read [plaintiff's] testimony as giving rise to a genuine [dispute] of material fact.")).

"In light of the relatively low bar created by the substantially-limits and summary-judgment standards," Meade's declaration and deposition are sufficient to create the requisite genuine dispute of material fact as to whether she was disabled at the time of her termination. *Williams*, 717 F. App'x at 448.

### b. Regarded as Disabled

As mentioned above, for a "regarded-as" claim, Meade is not required to establish that her employer believed her impairment was substantially limiting. All that is required is proof the employer knew of an impairment or erroneously perceived one. 42 U.S.C. § 12102(3)(A).

Defendant cites to a recent case from the Fifth Circuit in support of its contention that summary judgment should be granted. In *Lyons v. Katy Independent School District*, Lyons pursued a "regarded-as" disability-based discrimination claim. 964 F.3d 298 (5th Cir. 2020). The district court granted summary judgment to Katy ISD on the ground that Lyons "fail[ed] to satisfy the first element of a prima facie showing of disability-based discrimination under the ADA as a matter of law." *Id.* at 302. As the Fifth Circuit analyzed, "[t]he district court concluded that, because Lyons's impairment lasted less than two months, she could not establish the first element of her prima facie case of disability-based discrimination." *Id.*

The Fifth Circuit, however, has not yet decided whether a plaintiff in a "'regarded as' disability-discrimination case must establish, as part of the *prima facie* case, that any perceived impairment was not transitory nor minor, or whether the transitory and minor nature of the perceived impairment is an affirmative defense that the employer must prove." *Id.* at 302–03. Further, the Fifth Circuit panel stated that it did not need to "wade into that discussion in this case

8

because, either way, there are no facts in dispute regarding the transitory and minor nature of Lyons's perceived impairment." *Id*. at 303. The facts of *Lyons* are distinguishable from this case.

To begin, the impairment in *Lyons* resulting from Lyons's lap band surgery "was objectively transitory and minor by her own admission, because the actual or expected duration of any impairment related to the lap band procedure was less than six months." *Id*. at 303. Lyons stated to her supervisor that she would be "out of work for 2 weeks and with restrictions for 6–8 weeks." *Id*. "Lyons did not point to evidence before the district court or in the record on appeal that the actual or expected duration of any impairment related to the lap band procedure was more than six months." *Id*.

Defendant claims that "Meade cannot show that Mr. Hauser ever considered her to have a physical or mental impairment that was not transitory." (Dkt. #19 at p. 18). Based on how Defendant presents this argument, it appears Defendant is stating Meade must show as part of her *prima facie* case that either her injury was not transitory or that Hauser did not regard her impairment as transitory. Defendant's assertion, however, is not the standard. Following the Fifth Circuit's lead in *Lyons*, the Court will not require Meade to establish that her impairment was not transitory or that Hauser did not regard her impairment as transitory as part of her *prima facie* showing.

As previously mentioned, for a "regarded-as" claim, a plaintiff is only required to show the employer knew of an impairment or erroneously perceived one. Meade presents evidence sufficient to raise a genuine issue of material fact. Included in her evidence is an email in which Meade complains of her impairment with Hauser copied on the email, (Dkt. #20, Exhibit 4 at Ingram000103), an excerpt from Hauser's deposition where he acknowledged being copied on the email, (Dkt. #20, Exhibit 3 at 90:5–91:6), and excerpts from Meade's deposition informing Hauser

9

of her impairments (Dkt. #20, Exhibit 1 at 49:25–50:15). Additionally, Meade provides emails to the Defendant's human resources department requesting FMLA paperwork (Dkt. #20, Exhibit 4 at Ingram000109). Such a request could put the employer on notice of Meade's impairments. Because Meade provided evidence suggesting Defendant knew she had and terminated her on account of her impairments, she has presented a *prima facie* case for her "actual disability" claim and her "regarded-as" claim.

## 2. Nondiscriminatory Reasons for Termination

The burden then shifts to Defendant to set forth a legitimate, nondiscriminatory reason for terminating Meade. "[T]o meet its burden of production under *McDonnell Douglas,* an employer must articulate a nondiscriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual." *Burton*, 798 F.3d at 231 (citing *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004)).

Here, Defendant articulates three reasons for terminating Meade: "(1) rude and unprofessional behavior to Ingram employees; (2) creating a hostile environment for her subordinates; and (3) frequent last minute cancellations or rescheduling of planned meetings with her team and superiors." (Dkt. #19 at p. 19). These reasons are legitimate, nondiscriminatory reasons for termination. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) ("Poor work performance is a legitimate, non-discriminatory reason for discharge."); *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 211 (5th Cir. 2018) (stating poor work performance is a legitimate, nondiscriminatory reason for termination); *Williams v. CVS Pharmacy, Inc.*, 1:10-CV-156, 2012 WL 3150780, at *11 (E.D. Tex. Aug. 2, 2012), aff'd sub nom. *Williams v. CVS*, 536 F. App'x 454 (5th Cir. 2013) (finding infractions of company policy are legitimate, nondiscriminatory reasons for termination).

### 3. Pretext

Having provided legitimate, nondiscriminatory reasons for terminating her, Meade must now "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.,* 333 F.3d 572, 578 (5th Cir. 2003). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 579 (internal quotations and citations omitted). "An explanation is false or unworthy of credence," and thus pretextual, "if it is not the real reason for the adverse employment action." *Id.* at 578.

Meade provided evidence that there may have been conflicting evidence as to what led to her termination. Further, the differing reasons for her termination, though not necessarily inconsistent, draw into question the timing of Defendant's decision to terminate her. The proximity of her request for the FMLA paperwork and her termination casts doubt on the motivations behind her termination. Defendant points out that "temporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys. L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), however, "[a]n inconsistent reason offered to explain an employee's termination *may* support a finding that the reason is mere pretext," *Read v. BT Alex Brown Inc.,* 72 F. App'x 112, 120 (5th Cir. 2003) (emphasis added), *cert. denied*, 540 U.S. 1180 (2004).

Resolving all reasonable doubts in favor of Meade, the Court finds a genuine issue of material fact regarding whether Defendant's reasons for terminating Meade were pretext for discrimination. Therefore, the Motion for Summary Judgment as to the TCHRA claims should be denied.

**II.     FMLA Retaliation**

To succeed on a claim for FMLA retaliation, an employee must show that "1) [s]he was protected under the FMLA; 2) [s]he suffered an adverse employment action; and 3) . . . the adverse decision was made because [s]he sought protection under the FMLA." *Perkins v. Child Care Assocs.,* 751 F. App'x 469, 473 (5th Cir. 2018) (per curiam) (ellipsis and internal quotation marks omitted) (quoting *Acker v. Gen. Motors, L.L.C.,* 853 F.3d 784, 790 (5th Cir. 2017)). In FMLA cases, the Fifth Circuit has also clarified that the third element requires a showing that "there is a causal link between the protected activity and the discharge." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). "When there is no direct evidence of discriminatory intent, we have typically relied on the familiar *McDonnell–Douglas* burden shifting framework to determine whether an employer discharged an employee in retaliation for participating in FMLA-protected activities." *Id*. If Meade establishes a *prima facie* case of retaliation, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating her. *Id*. If Defendant succeeds in doing so, "the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." *Id*. at 332–33.

The parties do not dispute that Meade made a request for FMLA leave or that she suffered an adverse employment action when she was terminated. The only issue regarding the *prima facie* case is causation.

Meade has established a *prima facie* case of retaliation. She provided sufficient evidence to establish a causal link. "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d at 583 (5th Cir. 2006) (citing *Wilson v. Lemington Home for the Aged,* 159 F. Supp. 2d 186, 195–96

(W.D. Pa. 2001) (explaining that a causal connection existed between the FMLA leave and the termination when the plaintiff was terminated while on FMLA leave and reasoning that the close proximity in time between FMLA leave and the adverse action establishes the necessary causal connection)).

The Supreme Court has acknowledged that when the temporal proximity is "very close," proximity alone suffices to establish causation in a *prima facie* case of retaliation. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In this case, the adverse employment action happened within nine days of Meade's request for FMLA paperwork. Such short temporal proximity is sufficient to establish a causal link for the purpose of establishing her *prima facie* case.

As discussed above, Meade has established a genuine issue of material fact exists as to whether Defendant's reason terminating her was pretext for discrimination. As a result, the Motion for Summary Judgment as to the FMLA retaliation claims should be denied.

## CONCLUSION

It is therefore **ORDERED** Defendant's Motion for Summary Judgment (Dkt. #19) is hereby **DENIED.**

**SIGNED this 14th day of December, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE